UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re

BRIGID GIAMBRONE,                           Case No. 1-16-42610-cec
                                            Chapter 11

                    Debtor.
-----------------------------------------------------------X

## BRIGID GIAMBRONE'S *SEVENTH AMENDED* PLAN OF REORGANIZATION, DATED SEPTEMBER 15, 2017

## ARTICLE I - SUMMARY

Brigid Giambrone ("Debtor"), the Debtor and Debtor-in-Possession, through the undersigned counsel, hereby submit to her creditors, as proponent, this Plan of Reorganization (the "Plan") pursuant to Section 1121, *et seq.*, of the United States Bankruptcy Code, 11 U.S.C. (the "Code").

A detailed discussion of the *Seventh Amended* Plan ("Plan") and its implementation is found in the *Seventh Amended* Disclosure Statement ("Disclosure Statement") of even date herewith. The Plan should be read in conjunction with the Disclosure Statement. The Debtor urges creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan or Disclosure Statement in making a determination in voting on the Plan. A detailed discussion of the voting rights of creditors is contained in the Disclosure Statement.

## ARTICLE II - DEFINITIONS

1.1 <u>Administrative Bar Date</u> means the first Business Day thirty (30) days after the Effective Date, and is the date by which all Administrative Claims must be filed with the Bankruptcy Court, except as otherwise provided in the Plan.

1.2 <u>Administrative Claim</u> means any cost or expense of administration of the Estate allowable under § 503(b) of the Bankruptcy Code, proof (or request for payment or approval) of which is timely filed by the Administrative Bar Date.

1.3 <u>Allowed Claim</u> means a Claim against the Debtor(s) (a) which is listed in the Debtor's Schedules (as amended), other than a Disputed Claim or a Claim to which an objection has been interposed; or (b) proof of which has been timely filed and with respect to which no timely filed objection to the allowance thereof has been interposed; or (c) which has been allowed by the Court in a Final Order, but only in the amount allowed. An Allowed Claim shall not include

unmatured post-petition interest unless otherwise stated in the Plan.

1.4   Assets means all property, real or personal, in which the Debtor(s) has/have an interest.

1.5  Avoidance Actions means proceedings commenced under Chapter 5 of the Bankruptcy Code.

1.6   Ballot means the form distributed to each holder of an impaired Claim on which is to be indicated, among other things, acceptance or rejection of the Plan.

1.7 Bankruptcy Code means Title 11 of the United States Bankruptcy Code.

1.8 Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of New York, or if such court ceases to exercise jurisdiction over the Case, the court or adjunct thereof that exercises jurisdiction over the Case.

1.9 Bankruptcy Rules means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the Bankruptcy Court, in either case, as now in effect or hereinafter amended (except that all time periods herein shall be calculated in accordance with the Bankruptcy Rules as in effect on the date hereon.

1.10 Bar Date means the date designated by the Bankruptcy Court as the last date for filing a proof of claim or proof of interest, as the case may be, against the Debtor.  The Bar Date is November 14, 2016.

1.11 Business Day means any day except Saturday, Sunday or other day on which commercial banks in the State of New York are authorized or required by law to close, or any other "legal holiday" as defined in Bankruptcy Rule 9006(a).

1.12 Case means the case commenced under Chapter 11 of the Code pending in the Bankruptcy Court, and bearing Case No. 1-16-42610-cec.

1.13 Cash means United States currency, drafts, checks, deposit accounts or other cash equivalents.

1.14 Claim means a claim as defined in §101(5) of the Code.

1.15 Claimant means a Person holding a Claim against the Debtor(s).

1.16  Class means each class of Claims or Interests established and set forth in Article II of the Plan.

1.17 Collateral means any property or interest in property of the Debtor(s) subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance or

2

otherwise invalid under the Code or applicable state law.

1.18 <u>Confirmation</u> means the entry of a Final Order of the Bankruptcy Court confirming the Plan.

1.19 <u>Confirmation Date</u> means the date on which the Confirmation Order is entered by the Bankruptcy Court.

1.20 <u>Confirmation Hearing</u> means the hearing under § 1128 of the Code scheduled by the Bankruptcy Court for consideration of Confirmation of the Plan as it maybe continued from time to time.

1.21 <u>Confirmation Order</u>  means the order of the Bankruptcy Court confirming the Plan.

1.22 <u>Creditor</u> means the holder of a Claim.

1.23 <u>Days</u> shall be calculated in accordance with Rule 6 of the Federal Rules of Civil Procedure.

1.24 <u>Debtor</u> means Brigid Giambrone.

1.25 <u>Disclosure Statement</u> means the Seventh Amended Disclosure Statement filed or to be filed by Debtor in connection with this  Plan, as modified, if applicable.

1.26 <u>Disputed Claim</u> means a Claim:

    (a) which is listed as disputed or contingent in the Debtor's Schedules as filed or as amended, or

    (b) which is listed as disputed under any provision of this  Plan, or

    (c) as to which a proof of claim was timely filed and an objection to such Claim was filed within 30 days after the Effective Date.

1.27 <u>Effective Date</u> means the first Business Day after the Confirmation Order becomes a Final Order.

1.28 <u>Equipment</u> means all machinery, tools, motor vehicles, furniture and fixtures, and all parts thereof and all accessions thereto and all software related thereto, including software that is embedded in and is part of said Equipment, so as not to include any Inventory.

1.29 <u>Exempt Property</u> means property claimed as exempt on Schedule C (as amended, if applicable) filed by the Debtor, unless such exemption has been disallowed by the Bankruptcy Court upon timely objection.

1.30 <u>Estate</u> means the bankruptcy estate(s) of the Debtor.  The use of the term in the singular does not mean that the estates are substantively consolidated.

1.31 <u>Executory Contracts</u> means all contracts, including unexpired leases, to which the Debtor was a party on the Petition Date and which were executory within the meaning of § 365 of the Code and which may be assumed or rejected by the Debtor.

1.32 <u>Final Decree</u> means the Final Order of the Bankruptcy Court that closes and dismisses the Case.

1.33 <u>Final Order</u> means an order or judgment of the Bankruptcy Court as entered on the docket in the case, that has not been reversed, stayed, modified, or amended, and as to which, wither (i) the time to appeal or seek certiorari has expired and no appeal or petition for certiorari has been timely filed, or (ii) any appeal or petition for certiorari that has been filed has been resolved by the highest court to which the order or judgment was appealed from or from which certiorari was sought.

1.34 <u>Inventory</u> means all goods held for sale or lease, including all raw materials, work in process, finished goods, and material used or consumed in the manufacture, production, preparation or shipping thereof, so as not to include any Equipment.

1.35 <u>Lien</u> has the meaning set forth in §101(37) of the Code.

1.36 <u>Material Default</u> of the Debtor shall occur if (1) Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan, for more than 14 calendar days after the time specified in the Plan for such payment or other performance; (2) upon such failure, the affected creditor has served upon Debtor and Debtor's attorney a written notice of Debtor's default; and (3) Debtor fails within 21 calendar days after the date of service of the notice of default either: (i) to cure the default; or (ii) to obtain from the court or affected creditor an extension of time to cure the default, or a determination that no default occurred.

1.37 <u>Miscellaneous Assets</u> means Assets other than Inventory, Equipment, Accounts Receivable or Avoidance Actions.

1.38 <u>Person</u> means an individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government, or any political subdivision thereof, or other legal entity.

1.39  <u>Petition Date</u> means June 14, 2016, the date on which the voluntary petition was filed by the Debtor.

1.40 <u>Plan</u> means this *Seventh Amended* Plan, as it may be amended, from time to time.

1.41 <u>Priority Claim</u> means a Claim made pursuant to § 507(a) of the Code, other than an Administrative Claim or a Professional Claim.

1.42 <u>Priority Tax Claim</u> means any Allowed Claim for taxes, including without limitation, income, property, withholding, payroll or excise taxes, or any penalty related to the foregoing to the extent such Claim is entitled to priority under § 507(a)(8).

1.43 <u>Professional</u> means any attorney, accountant, appraiser, consultant, financial advisor or other professional retained or to be compensated pursuant to an order of the Bankruptcy Court entered under any provision of the Code.

1.44 <u>Professional Claim</u> means any Claim for compensation or reimbursement of a Professional arising at any time before the Confirmation Date.

1.45 <u>Proof of Claim</u> means a proof of Claim filed pursuant to § 501 of the Code and Part III of the Bankruptcy Rules.

1.46 <u>Rejection of Claim</u> means a Claim arising from the rejection of an executory contract or unexpired lease in such amounts as are permitted by the Code and applicable law, and as are allowed by the Bankruptcy Court.

1.47 <u>Schedules</u> means the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court and any amendments thereto.

1.48 <u>Secured Claim</u> means any Claim, debt, or demand against the Debtor(s) as determined in accordance with § 506(a) of the Code which is secured by a properly perfected mortgage, deed of trust, Lien, pledge, or security interest in, or right of set off against, any Property of the Debtor(s), but only to the extent of the value of the Collateral as of the Confirmation Hearing.

1.49 <u>Unexpired Lease</u> means a lease of personalty or realty which had neither expired by its terms nor been properly terminated as of the Petition Date, and which has not expired by its terms or been rejected by a Final Order on or prior to the Confirmation Date.

1.50 <u>Unliquidated Claim</u> means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.51 <u>Unsecured Claim</u> means any unsecured debt, demand or Claim of whatever nature other than an Administrative Expense, a Professional Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim, to the extent as determined and allowed by the Bankruptcy Court in accordance with § 502 of the Code.

## ARTICLE II - CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 Class 1. All Allowed Claims entitled to priority under § 507 of the Code (except Administrative Claims under § 507(a)(2) and Priority Tax Claims under § 507(a)(8)).

2.02 Class 2  consists of the secured prepetition claim of Bank United NA in the amount of $803,931.47 as of the filing date, secured by a first mortgage on Debtor's real property located at 108 Holcomb Avenue, Staten Island, New York 10312 (Property A).  The secured claim of Bank United NA as set forth in Proof of Claim No. 8 will be treated as wholly secured under the Plan.

2.03 Class 3 consists of the secured prepetition claim of Branch Bank & Trust ("BB&T") in the amount of $369,182.62 as of the filing date, secured by a first mortgage on the Debtor's real property located at 4516 Seagull Drive, New Port Richey, Fl 34652 (Property B).  The Debtor has filed a motion to value Property B and to reduce the secured claim of BB&T to $208,000.00 pursuant to 11 U.S.C. §506. BB&T filed objections to the motion to value.  The parties have stipulated that the value and secured amount of Property B is $287,000.00 which shall be paid as a secured claim and the balance of $82,182.62, shall be treated as unsecured and shall participate pro rata in the unsecured dividend of Class.

2.04  Class 4 consists of the secured prepetition claim of VNB New York LLC ("VNB") in the amount of $689,268.57, which includes postpetition interest through 06/13/2017 in the amount of $56,264.75 and attorneys fees of $42,834.37 and credits Debtor with adequate protection payments made through June, 2017 in the amount of $35,000.00 all secured by a first mortgage on the Debtor's real property located at 122 Holcomb Avenue, Staten Island, New York 10312 (Property C) as more fully set forth in Proof of Claim 6 (as amended on June 14, 2017).

2.05 Class 5 consists of the secured prepetition claim of Bayview Loan Servicing, LLC ("Bayview") in the amount of $528,733.00 as of the filing date, secured by a first mortgage on Debtor's real property located at 82 Holcomb Avenue, Staten Island, New York 10312 and 32 Belfield Avenue, Staten Island, New York (which share the legal description in the mortgage) (Property D and E ). The secured claim of Bayview will be treated as wholly secured under the Plan.

2.06 Class 6 consists of the secured claim of McCormick 105, LLC ("McCormick") in the amount of $819,617.11 as of the filing date, secured by a first mortgage on Debtor's real property located at 18 Belfield Avenue, Staten Island, New York 10312 (Property F) as more fully set forth in Proof of Claim 5.  The Debtor has filed a motion to value Property F and to reduce the secured claim of McCormick to $680,000.00 pursuant to 11 U.S.C. §506.  The Debtor has withdrawn the motion to value and the parties will stipulate to a value of $680,000.00. McCormick has made an election pursuant to 11 U.S.C. §1111(b)(2).  The Court has lifted the automatic stay with regard to McCormick's secured claim on Property F and any and all claims of McCormick against the Debtor will be resolved in the state court foreclosure action.

2.07 <u>Class 7</u> consists of the secured claim of Shellpoint Mortgage Servicing ("Shellpoint") in the amount of $454,000.00 as of the filing date, secured by a first mortgage on Debtor's real property located at 93 Bush Avenue, Staten Island, New York 10312 (Property G).  The secured claim of Shellpoint will be treated as wholly secured under the  Plan.

2.08  <u>Class 8</u>  consists of the secured claim of Ocwen Loan Servicing, LLC ("Ocwen") in the amount of $650,000.00 as of the filing dated, secured by a first mortgage on Debtor's real property located at 171 Androvette Avenue, Staten Island, New York 10312 (Property H).  The Debtor has filed a motion to value Property H and to reduce the secured claim of Ocwen to $210,000.00 pursuant to 11 U.S.C. §506.   A subsequent appraisal of Property H established a value of $370,000.00 and the parties have stipulated as to that value.

2.09 <u>Class 9</u> consists of the secured claim of JP Morgan Chase Bank NA ("Chase") which is secured by a third mortgage on Property A and is wholly unsecured.  The Debtor has filed a motion to avoid the claim of Chase pursuant to 11 U.S.C. §522(f).  For purposes of payment under the  Plan, this claim will be will be treated as a General Unsecured Claim and will receive payment as provided for in Class 12.

2.10 <u>Class 10</u> consists of the secured claim of PNC Bank NA ("PNC") in the amount of $76,005.69 as of the filing date, secured by a Second mortgage on Debtor's real property located at 108 Holcomb Avenue, Staten Island, New York 10312 (Property A).  The secured claim of PNC is currently not in arrears.  The claim of PNC will be treated as wholly secured under the Plan.

2.11  <u>Class 11</u> consists of the secured claim of Santander Bank USA ("Santander").  The Santander claim shall be valued under 11 U.S.C. §506(a) at $18,209.54 less the sum of payments made post-petition.  If Santander disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by Debtor will be determined to be the value of the collateral.

2.12 <u>Class 12</u> consists of all general unsecured claims against the Debtor, including Class 9 and the unsecured portions of classes 3 and  8.

Confirmation of the  Plan shall serve to release any holder of a Class 12 claim as of the Petition Date of any claim or cause of action against such holder (other than defenses of setoff or recoupment).  Payments on Class 12 claims shall be mailed to the address of the creditor on the proof of claim unless the creditor files a change of address notice with the Court.  Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds retained may be retained by the Debtor.

**ARTICLE III - TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01 Unclassified Claims. Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02 Administrative Claims. Each holder of an Administrative Claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan (as defined in Article VII), in cash, or as set forth in an Order of the Court allowing such claim, upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03 Priority Tax Claims. Each holder of a Priority Tax Claim will be paid in full as it comes due.

3.04 United States Trustee Fees. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the Effective Date of the Plan will be paid on the Effective Date. The Debtor will pay any outstanding U.S.Trustee Fees and any applicable interest thereon.

**ARTICLE IV - TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01 Claims and interests shall be treated as follows under this Plan:

**Class Impairment Treatment**

Class 1 - Priority Claims - Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final nonappealable order.

Class 2 – Secured Claim of Secured Creditor Bank United, NA is unimpaired under this Plan and will be paid in full pursuant to the Modification Agreement entered into on October 16, 2015, a copy of which is annexed hereto as Exhibit "A", which modified terms shall be as follows:

The secured prepetition claim of Bank United NA in the amount of $803,931.47 as of the filing date, secured by a first mortgage on Debtor's real property located at 108 Holcomb Avenue, Staten Island, New York 10312 (Property A). The secured claim of Bank United NA as set forth in Proof of Claim No. 8 will be treated as wholly secured under the Plan. As more fully set forth in the Modification Agreement dated October 16, 2015 said loan shall be paid with interest at the rate of two percent (2.00%) per annum with monthly payments of principal and interest in the amount of $2,342.02 plus an escrow component of $1,060.30 (which may adjust periodically) for a period of five years at which time the mortgage will adjust as more fully set

forth in said Modification Agreement.  (See Modification Agreement annexed hereto as Exhibit "A").

Class 3 - Secured Claim of Secured Creditor Branch Bank & Trust (BB&T) is impaired under the Plan and will be paid as follows:

The secured prepetition claim of Branch Bank & Trust ("BB&T") in the amount of $369,182.62 as of the filing date, secured by a first mortgage on the Debtor's real property located at 4516 Seagull Drive, New Port Richey, Fl 34652 (Property B).  The Debtor has filed a motion to value Property B and to reduce the secured claim of BB&T to $208,000.00 pursuant to 11 U.S.C. §506. BB&T filed objections to the motion to value.  The have stipulated that the value and secured amount of Property B is $287,000.00 which shall be paid as a secured claim at 3.25%, with the maturity date in the concerned Note extended from November 1, 2038 to October 1, 2046 and the balance of $82,182.62, shall be treated as unsecured and shall participate pro rata in the unsecured dividend of Class 12.  The Debtor shall make monthly payments to BB&T towards its' allowed secured claim in the monthly sum of $1,249.04 consisting of principal and interest commencing with the December 1, 2016 payment and concluding with the November 1, 2046 payment, and if any amounts remain outstanding under the existing Note, Debtor will pay that amount in full on that date.  The Debtor shall be responsible for the direct payment of taxes, monthly HOA/Condominium dues and insurance upon Property B.  The Debtor and BB&T will have entered into a written Stipulation of Settlement of the claims set forth in the motion to value which Stipulation has been "so ordered" by this Court (Docket 104).

Class 4 - The secured claim of VNB New York LLC is impaired under this Plan and shall be paid as follows:

The Debtor shall sell Property C and satisfy the outstanding secured claim of VNB of all sums due through the date of closing of any sale of said Property.   The Debtor listed Property C for sale with Realty Executives located in Staten Island, New York with an initial listing price of $879,000.00 on August 14, 2017, subject to higher and better offers.  The Debtor anticipates that Property C will be closed within six months from the Effective Date of the Plan.  In the event that Property C has not closed by the 180th day after the Effective Date of the Plan, counsel for VNB can file an Affirmation of Non-Compliance and the Court can issue an Order terminating the automatic stay as to the Class 4 secured claim on Property C.   The Debtor shall provide to VNB a report of any offers received on Property C by the broker

Class 5 - The secured prepetition claim of Bayview Loan Loan Servicing LLC is unimpaired under this Plan and shall be paid as follows:

The secured prepetition claim of Bayview Loan Servicing, LLC ("Bayview") in the amount of $528,733.00 as of the filing date, secured by a first mortgage on Debtor's real property located at 82 Holcomb Avenue, Staten Island, New York 10312 and 32 Belfield Avenue, Staten Island, New York (which share the same tax lot) (Property D and E ). The secured claim of

Bayview will be treated as wholly secured under the Plan.  As more fully set forth in the Modification Agreement said loan shall be paid with interest at the rate of 3.727% per annum with monthly payments of principal and interest in the amount of $2,042.31 plus an escrow component of $1,549.33 (which may adjust periodically) for a period of 3 years at which time the mortgage will adjust pursuant to the Modification Agreement.  (See Modification Agreement annexed hereto as Exhibit "B").

Class 6 - The secured prepetition claim of McCormick 105 LLC is impaired under this Plan and shall be paid as follows:

The Court has granted the motion of McCormick to lift the automatic stay and any and all claims of McCormick against the Debtor will be resolved in the state court foreclosure action.

Class 7 - The secured prepetition claim of Shellpoint Mortgage Servicing is unimpaired under this Plan and shall be paid as follows:

The secured claim of Shellpoint Mortgage Servicing ("Shellpoint") in the amount of $454,000.00 as of the filing date, secured by a first mortgage on Debtor's real property located at 93 Bush Avenue, Staten Island, New York 10312 (Property G).  The secured claim of Shellpoint will be treated as wholly secured under the Plan.  Said loan shall be paid with interest at the rate of 2.003% per annum with monthly payments of principal and interest in the amount $1,534.82 plus an escrow component of $566.45 (which may adjust periodically) pursuant to the Modification Agreement. (See Modification Agreement annexed hereto as Exhibit "C").

Class 8 - The secured prepetition claim of Ocwen Loan Servicing is impaired under this Plan and shall be paid as follows:

The secured claim of Ocwen Loan Servicing, LLC ("Ocwen") in the amount of $650,000.00 as of the filing dated, secured by a first mortgage on Debtor's real property located at 171 Androvette Avenue, Staten Island, New York 10312 (Property H).  The Debtor has filed a motion to value Property H and to reduce the secured claim of Ocwen to $210,000.00 pursuant to 11 U.S.C. §506.   A subsequent appraisal of Property H established a value of $370,000.00 and the parties have stipulated that the new principal balance of $370,000.00 shall be paid with interest at the rate of four and ½ (4.5%) per centum per annum based upon a 360 month amortization schedule with monthly payments of principal and interest in the amount of $1,875.00 only until Property H is sold at which time the remaining principal balance with all accrued interest shall be paid in full  Debtor's first monthly payment shall be due on July 1, 2017 or the 1st day of the month following the confirmation of the  Plan, whichever occurs later. Debtor shall be responsible for the payment of real estate taxes on Property H.

Class 9 - The secured prepetition claim of JP Morgan Chase Bank NA is impaired under this Plan and shall be paid as follows:

The secured claim of JP Morgan Chase Bank NA ("Chase") which is secured by a third mortgage on Property A and is wholly unsecured. The Debtor has filed a motion to avoid the claim of Chase. For purposes of payment under this Plan, this claim will be will be treated as a General Unsecured Claim and will receive payment as provided for in Class 12. The Chase claim shall be paid as an unsecured Class 12 claim.

Class 10 - The secured prepetition claim of PNC Bank NA is impaired under this Plan and shall be paid as follows:

The secured claim of PNC Bank NA ("PNC") in the amount of $76,005.69 as of the filing date, secured by a Second mortgage on Debtor's real property located at 108 Holcomb Avenue, Staten Island, New York 10312 (Property A). The secured claim of PNC is currently not in arrears. The Debtor's post-petition mortgage payments to PNC will be paid with 2% interest amortized over 15 years which will amount to a payment of $489.07 per month.

Class 11 - The secured prepetition claim of Santander Bank USA is unimpaired under this Plan and shall be paid as follows:

The secured claim of Santander Bank USA ("Santander"). The Santander claim shall be valued under 11 U.S.C. §506(a) at $18,209.54 less the sum of payments made post-petition. If Santander disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by Debtor will be determined to be the value of the collateral.

Class 12 - General Unsecured Claims - All general unsecured claims against the Debtor, including Class 9 and the unsecured portions of classes 3 and 8 are impaired under this Plan. Holders of Class 12 claims shall be paid *pro rata*, a total of $114,000.00, to be paid as follows:

1) Monthly installments to begin within ten days after the Effective Date as follows:

   a) $0.00/month for a period of 6 months, then
   b) $1,000.00/month for a period of 72 months.

2) The Debtor's portion of the proceeds realized from the sale of Property C will be paid into the Debtor's estate and, after satisfaction of administrative claims and priority claims, will be paid to Class 12 creditors. Debtor anticipates that there will be $42,000.00 in surplus to Class 12 creditors. Any payments made to Class 12 creditors from the proceeds of Property C realized by the Debtor shall reduce any payments to be made to Class 12 creditors set forth in subsection 1 hereinabove. In the event that Debtor realizes less than $42,000.00 from the sale of Property C, then the payment to Class 12 creditors shall be reduced by the difference in the amount realized.

3) Proceeds of the NYPIUA Litigation and the MeritPlan Litigation, after payment of court approved attorneys fees and costs, which were not necessary to satisfy any portion of the Class 8 secured claim, administrative expenses or priority claims, will be paid to Class 12 creditors.  Debtor does not anticipate that there will be any surplus to Class 12 creditors.

Confirmation of the  Plan shall serve to release any holder of a Class 12 claim as of the Petition Date of any claim or cause of action against such holder (other than defenses of setoff or recoupment).  Payments on Class 12 claims shall be mailed to the address of the creditor on the proof of claim unless the creditor files a change of address notice with the Court.  Any check mailed to the proper address and returned by the post office as undeliverable, or not deposited within 180 days, shall be void and the funds retained may be retained by the Debtor.

This class is impaired under the Plan.

## ARTICLE V- ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Disputed Claim. A Disputed Claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a Proof of Claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no Proof of Claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a Disputed Claim unless such claim is allowed by a final non-appealable order.

5.03 Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a Disputed Claim with Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI - PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01 Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following Executory Contracts and/or Unexpired Leases effective upon the Effective Date of this Plan as provided in Article VII:

Residential real estate lease with Denise Coles for real property located at 93 Bush Avenue, Staten Island, New York 10303.

Residential real estate lease with Libia Colon for real property located at 82 Holcombe Avenue, Staten Island, New York.

Residential real estate lease with Linda Saban for real property located at 18 Belfield Avenue, Staten Island, New York.

Residential real estate lease with John Vescera for real property located at 18 Belfield Avenue, Staten Island, New York.

Residential real estate lease with Theresa Morgante for a portion of 108 Holcomb Avenue, Staten Island, New York.

(b) The Debtor will be conclusively deemed to have rejected all Executory Contracts and/or Unexpired Leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the Effective Date of this Plan. A Proof of Claim arising from the rejection of an Executory Contract or Unexpired Lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan.

## ARTICLE VII - MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor shall fund the Plan from income from her social security ($742.00 per month), rents from real estate (totaling $14,835.73 per month), contribution from the Debtor's daughter ($1,800.00 per month), the contribution from the Debtor's husband ($583.61 net rent proceeds; $2,350.00 social security income; $2,726.00 pension income - all per month), any proceeds realized from the sale of Property C and Property H, and any surplus from the insurance proceeds after satisfaction of the Class 8 secured claim.

1. With regard to the rental income, the Debtor advises of the following:

The Debtor has written leases with tenants as follows:

1) Residential real estate lease with Denise Coles for real property located at 93 Bush Avenue, Staten Island, New York.

2) Residential real estate lease with Libia Colon for real property located at 82 Holcombe Avenue, Staten Island, New York.

3) Residential real estate lease with Linda Saban for real property located at 18 Belfield Avenue, Staten Island, New York.

4) Residential real estate lease with John Vescera for real property located at 18 Belfield Avenue, Staten Island, New York.

5) Residential real estate lease with Theresa Morgante for a portion of 108 Holcomb Avenue, Staten Island, New York.

The Tenant at Property G receives assistance from the New York City Housing Authority ("Section 8 Assistance"). Since the Debtor is willing to accept Section 8 Assistance, this makes this rental both more easily rented since there is a shortage of such housing on Staten Island, and allows her to charge above average rents.

The remaining tenants are month to month tenancies and have been rented as follows:

Property C - The main house has been rented to the same tenant for approximately 5 years and the apartment has been rented to the same tenant for 18 months.

Property D - The main house tenant moved in in March 2016 and the apartment was rented on December 1, 2016. The previous tenant moved out of the apartment on November 30, 2016 and had lived there for 3 years.

Property E - The same tenant has resided there for over 2 years.

Property F - The main house tenant has lived there since March, 2015. The apartment tenant has lived there for a year.

Property G - The main house has been rented to the same tenant for 10 years. The apartment has been rented to the same tenant for over 2 year.

The Debtor represents that the properties are easily rented and seldom vacant. Her reliance on summary proceedings to remove nonperforming tenants is minimal.

2. The Debtor shall retain the Assets of the estate, with the exception of Property C and Property H as set forth hereinbelow, and shall pay therefrom ordinary living expenses, the operating expenses for the real estate, and creditors the amounts set forth in the Plan. The Debtor shall retain Property F subject to the rights of McCormick as determined in the state court foreclosure action.

3. Upon confirmation of the Plan, the Debtor shall market and sell Property C in its' current condition and apply any proceeds from the sale, after payment of ordinary closing costs including real estate brokers fees, attorneys fees, transfer taxes and any past due real estate taxes, to the satisfaction of the secured claim of Class 4 and any capital gains taxes which may accrue as the result of said sale. To the extent the balance of the sale proceeds exceed the Class 4 secured claim and any capital gains taxes which may accrue, one half of such proceeds will be paid to the bankruptcy estate to satisfy first administrative and priority claims and the balance, if any, shall be paid to Class 12 claims. While Property C is listed for sale, the Debtor will continue making the adequate protection payments of $3,500.00 which is attributable to principal and will reduce the balance owed to Class 4. Debtor anticipates that Property C will close within six (6) months from the date it is listed for sale based upon the statistics of the National Association of Realtors which allows that in New York homes generally sell within 41-75 days.

This additional time allows for 90+ days for a contract to be negotiated and a closing to occur. (See National Association of Realtors Statistics annexed hereto as Exhibit G). A motion to retain Realty Executives as a real estate broker to sell Property C will be filed.  In the event that Property C has not closed on the 180th day after the Effective Date of the Plan, the Class 4 secured creditor can file an Affirmation of Non-Compliance with the Court at which point the Court can issue an order lifting the automatic stay as to the Class 4 secured creditors claim on Property C.

      4.   Upon confirmation of the Plan, the Debtor shall market and sell Property H in its' current condition and apply any proceeds from the sale, after payment of ordinary closing costs including real estate brokers fees, attorneys fees, transfer taxes and any past due real estate taxes, and any capital gains taxes to the satisfaction of the secured claim of Class 8.  To the extent the balance of the sale proceeds are insufficient to satisfy the secured claim of Class 8, the Debtor shall use her portion of the proceeds of the NYPIUA Litigation and MeritPlan Litigation, after payment of any Court approved attorneys fees and costs, to satisfy the balance of the Class 8 secured claim.  In the event that the Debtor holds any remaining proceeds of the NYPIUA Litigation and MeritPlan Litigation after satisfaction of the Class 8 secured claim, the proceeds shall be used to satisfy any unpaid Administrative Claims and Class 1 Claims, and after those claims are paid in full, will distribute any remaining balance to the holders of Class 12 general unsecured claims as more fully set forth herein.  While Property H is listed for sale, the Debtor will make mortgage payments as set forth in Class 8 and that portion of each mortgage payment made which is attributable to principal will reduce the balance owed to Class 8".   Debtor anticipates that Property H will close within six (6) months from the date it is listed for sale based upon the statistics of the National Association of Realtors which allows that in New York homes generally sell within 41-75 days.  This additional time allows for 90+ days for a contract to be negotiated and a closing to occur. No real estate broker has been retained at present to list Property H.

      5.   Consistent with the provisions of the  Plan and subject to any releases provided for herein, the Debtor reserves her right to begin or continue any adversary proceeding permitted under the Code and Rules to collect any debts, or to pursue claims in any court of competent jurisdiction.  Except as expressly provided for in the  Plan, nothing in the  Plan shall be deemed to constitute a waiver of any claim that the Debtor may assert against any other party, including the holder of any claim provided for in the  Plan, and the allowance of any claim against the Debtor or the Estate shall not bar any claim by the Debtor against the holder of such claim.

## ARTICLE VIII - GENERAL PROVISIONS

8.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

8.02  Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.04 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of New York govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX - DISCHARGE AND CLOSING

9.01.   Upon completion of all payments due to Class 12 as provided for in the  Plan, the Debtor shall be entitled to a discharge of and from all debts dischargeable under § 1141(d) of the Code (which shall include Class 12 Claims).  The payments on the Classes 2-12 shall not be deemed payments under the plan for purposes of § 1141(d)(5)(A), such that the Debtor shall be entitled to her discharge upon completion of payments to Class 12 claims.

## ARTICLE X - RETENTION OF JURISDICTION

Following the Confirmation Date, the Court shall retain jurisdiction over the Debtor, the Debtor's operations and Assets for the following purposes until the Court enters an Order closing the case:

A.  To rule on the allowance or classification fo claims and to hear any objections thereto. The failure of the Debtor to object to, or to examine any claim for the purposes of voting shall not be deemed a waiver of the Debtor's right to object to such claim in whole or in part;

B.  To hear and determine all adversary proceedings and contested matters;

C.  To allow and approve or disapprove any administrative expenses not previously allowed;

D.  To determine an resolve questions concerning the existence of defaults under the Plan;

E.  To modify the Plan pursuant to § 1127(b) of the Code;

F.  To correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Oder of Confirmation as may be necessary to carry out the purposes and intent of the Plan; and

G.  To issue any Order necessary to carry out the Plan.

## ARTICLE XI - MODIFICATION OF PLAN

The Debtor may alter, amend, or modify the Plan under § 1127(a) of the Bankruptcy Code at any time before the Confirmation Date, so long as the Plan, as modified, meets the requirements of §§ 1122 and 1123. The Debtor may also alter, amend or modify the Plan under § 1127(b), following the Confirmation Date but before the Effective Date. The Debtor may revoke or withdraw the Plan before the Confirmation Date. If the Plan is revoked or withdrawn before the Confirmation Date, the Plan shall be of no force or effect, and shall be deemed null and void. If the Plan is revoked or withdrawn before the Confirmation Date, nothing contained herein shall in any way effect or prejudice the rights of the Debtor with regard to Claims, Avoidance Actions, or any other rights or interests. After confirmation, the plan may be modified pursuant to §1127(e). No material modification of the Plan will be effective post-confirmation without a hearing before the Court upon notice to all interested parties.

The payments on the Class 2 through 11 Claims shall not be deemed payments under the Plan for purposes of §1127(e), such that the Plan may not be modified under §1127(e) after

payment in full of Class 12 claims.

**ARTICLE XII - <u>MISCELLANEOUS</u>**

No creditor may take any collection action against the Debtor or property of the estate of the Debtor so long as Debtor is not in Material Default in performing her obligations to such creditor under the Plan.

On the Effective Date, all property of the estate will vest in the reorganized Debtor pursuant to §1141(b) of the Code free and clear of all claims and interest except as provided in this Plan.

Except as specifically provided in this Plan, the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under state law. To the extent a creditor retains a lien under the Plan, except as provided in this Plan, that creditor retains all right provided by such lien under applicable non-Bankruptcy law.

The Debtor shall file with the Court and provide copies to the Office of the United States Trustee post-confirmation status and disbursement reports. Such reports are to be filed by the 20th day after the end of the relevant reporting quarter until a Final Decree is entered by the Court.

Pursuant to EDNY LBR 3022-1, the Debtor shall be required to file a final decree motion with the Court on notice to the Office of the United States Trustee within 14 days following the full administration of the Debtor's estate.

Respectfully submitted,

    /s/Brigid Giambrone

By: _____

    Brigid Giambrone

    /s/Fredrick P. Stern

By:_____

Fredrick P. Stern, Attorney for Debtor

Dated: September 15, 2017